IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD CLUTE,

        Plaintiff,

     v.

CAROLYN COLVIN,
Acting Commissioner of Social Security
Administration,

        Defendant.
_____

Civ. No. 6:12-cv-02185-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Donald Clute brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court is asked to consider (1) whether the ALJ properly evaluated the testimony of plaintiff and lay witness, Janine Clute, and (2) whether the ALJ relied on erroneous Vocational Expert (VE) testimony. Because the ALJ properly considered the relevant testimony and properly relied on VE testimony, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Clute applied for SSI on December 21, 2004, alleging disability beginning March 7, 2004. Tr. 70, 74, 690. This claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the

1 – OPINION AND ORDER

Honorable Marilyn S. Mauer on June 25, 2007. Tr. 667–86. ALJ Mauer denied plaintiff's claim by written decision dated August 23, 2007. Tr. 779–88. Plaintiff sought review from the Appeals Council, which was subsequently denied. Tr. 5–7. Plaintiff appealed the matter to this Court, and on March 17, 2009, this Court remanded the matter for further proceedings. Tr. 698–99 (*Clute v. Comm'r of Soc. Sec.*, Case No. 07-1594-HO (D. Or. Mar. 17, 2009)). Pursuant to this initial remand, the ALJ was instructed to "analyze plaintiff's assertion of limitations in dealing with people." Tr. 699.

Plaintiff appeared a second time before ALJ Mauer on December 8, 2009. Tr. 1122–29. ALJ Mauer denied plaintiff's claim by written decision dated December 23, 2009. Tr. 707–715. Plaintiff sought review from the Appeals Council, which was subsequently denied. Plaintiff appealed the matter to this Court, and on April 27, 2011, this Court remanded the matter for further proceedings. *Clute v. Astrue*, No. CV 10–6050–MO, 2011 WL 1626541, at *8 (D. Or. Apr. 28, 2011). Pursuant to this second remand, the ALJ was instructed to "address Mr. Clute's allegation of migraine headaches, the relevant medical record, and Mr. and Mrs. Clute's associated testimony."[1] *Id.*

Plaintiff appeared before ALJ John Madden on May 3, 2012. Tr. 1130–52. ALJ Madden denied plaintiff's claim by written decision dated August 3, 2012. Tr. 690–96. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on February 15, 1950, was 54 years old when he filed his application for SSI and 59 years old at his date last insured, December 31, 2009. Tr. 65. Plaintiff alleges

---

[1] The remand order also instructed the ALJ, if necessary to: (1) "revise her RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Mr. Clute's workplace limitations" and (2) "make adequate step four and five findings incorporating any revised findings." *Clute*, 2011 WL 1626541, at *8.

2 – OPINION AND ORDER

disability based on a combination of impairments, including: "difficulty being around people; ability to lift 5-10 pounds; chronic lower back pain and inability to bend over; bilateral knee pain; memory deficiency; easily irritable; post-traumatic stress disorder; colitis; severe migraines that occur 2-3 times per month and last for 1-2 days on average; need to lay down when he experiences the headaches; tinnitus; suicidal thoughts; depression; auditory hallucinations; inability to sit or stand for more than 20-30 minutes at a time; frequent need to rest after alternating between sitting and standing; and status post left knee replacement." Pl.'s Br. 3, ECF No. 17.[2]

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable

---

[2] ALJ Madden found under step two that plaintiff had the following severe impairments: "left knee osteoarthritis, status post total knee arthroplasty; mild right knee osteoarthritis; right-sided L4 disk herniation, status post surgical repair in 2004; chronic L4-5 radiculopathy with low back pain; intermittent left and right hip pain attributable to mild degenerative changes; and migraine headaches." Tr. 693.

of making an adjustment to other work after considering the claimant's Residual Functional Capacity (RFC), age, education, and work experience. *Id.*

Plaintiff contends that: (1) the ALJ improperly rejected plaintiff's testimony; (2) the ALJ improperly rejected lay witness testimony; (3) the ALJ relied on erroneous VE testimony; and (4) the ALJ failed to evaluate plaintiff's change in age category. Pl.'s Br. 10–23, ECF No. 17.

## I. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected his testimony related to his headaches. Pl.'s Br. 11–14, ECF No. 17. In response, defendant argues that substantial evidence supports the ALJ's credibility findings. Def.'s Br. 4–9, ECF No. 21.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR § 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [his] symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[3] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

---

[3] "The Cotton test imposes only two requires on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

Because the ALJ found that plaintiff's migraine headaches constituted a severe impairment at step two, *see* tr. 693, this Court's remaining inquiry focuses on whether the ALJ properly discounted plaintiff's testimony about the severity of plaintiff's symptoms, and whether the ALJ incorporated plaintiff's impairment into plaintiff's RFC assessment.

The ALJ, in evaluating plaintiff's headaches, found that plaintiff's "symptoms [were] not fully credible" to the extent they were inconsistent with plaintiff's RFC. Tr. 695; *see also* tr. 694 (identifying plaintiff's RFC). In support of this finding, the ALJ provided specific, clear and convincing reasons. *See* tr. 695. First, the ALJ identified inconsistencies within the plaintiff's own testimony and between plaintiff's testimony and the testimony of plaintiff's wife, Janine Clute. *See* tr. 695.[4] Plaintiff testified in 2007 that he experienced headaches approximately three times a month, resulting in impaired eye sight and grogginess for a couple of days. Tr. 676. In 2012, plaintiff testified that the frequency and severity of his symptoms varied: "I can go for two or three weeks . . . and not have anything, and then I can have . . . three in a week. Tr. 1141. Plaintiff also indicated that his headaches may have started in the early 1990's. Tr. 1149. In

---

[4] The ALJ found:

> The claimant testified that his headache symptoms first began in 1970, but that they became progressively worse in the early 1990's. Although he was uncertain of the year when his headache symptoms reached the severity of which he testified in 2007 – he agreed that his current headache symptoms have been the same throughout the period under review. He indicated that he can sometimes go 2-3 weeks without any headache symptoms whatsoever, but that he can then experience 3 episodes in a single week. During such episodes, he has taken prescription medication over the past 5 years.

> The claimant's spouse, [Janine] Clute, testified that she has personally observed the claimant's behavior after experiencing headaches. She was unable to establish an onset date of the claimant's most severe episodes, but reported that the claimant has experienced migraine symptoms for the last several years . . . . Ms. Clute previously testified in this matter that the claimant's headache symptoms can lay him up for several days due to pain and fatigue. This appears inconsistent with the claimant's own testimony, which suggests that his headache symptoms are more intermittent in nature.

Tr. 695.

5 – OPINION AND ORDER

contrast, Mrs. Clute testified in 2009 that plaintiff "occasionally" went "months" without migraines, but generally experienced migraines "at least once a month to the point to where he is in bed." Tr. 1127. In 2012, Mrs. Clute further specified that plaintiff generally had a headache and then suffered the aftereffects for days. Tr. 1147–48. Mrs. Clute also indicated that plaintiff's headaches had been occurring for the last *several* years. Tr. 1148. Second, the ALJ found that the "medical records show no instances of diagnosis or treatment related to the claimant's migraine symptoms." Tr. 695 (citing *Clute*, 2011 WL 1626541, at *7); *see also* 20 C.F.R. § 404.1529(c) (indicating that treatment is "an important indicator of the intensity and persistence of [plaintiff's] symptoms."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his [or her] credibility determination.").[5] As stated by the ALJ, "[o]ne would reasonably expect such medical evidence if the condition was as debilitating as Mrs. Clute alleged." Tr. 695. Third, the ALJ noted that plaintiff did not report a history of headaches during his neuropsychological evaluation conducted in August 2009. Tr. 695 (citing tr. 1020); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (recognizing that a claimant's failure to report symptoms may constitute a clear and convincing reason to discredit that claimant's complaint).

As to plaintiff's RFC, the ALJ explicitly incorporated plaintiff's "allegations of intermittent headache symptoms . . . by restricting the [plaintiff] to a range of sedentary work, as defined above, that assures that [plaintiff] is permitted to rest for at least 30 minutes after 4 hours of work activity." To the extent that this RFC does not reflect the testimony of plaintiff, the ALJ provided specific, clear and convincing reasons for his departure. *See supra* § I.

---

[5] Plaintiff contends that this is a "non-factor" because "there is no dispute whether Plaintiff has received ongoing prescription medicine for *several years* regarding headaches." Pl.'s Br. 13, ECF No. 17 (emphasis added). However, as noted by defendant, plaintiff's date last insured was December 31, 2009, approximately twenty-nine months before plaintiff's most recent hearing.

## II. Lay Witness Testimony

Plaintiff contends the ALJ improperly rejected the lay witness testimony of plaintiff's wife, Mrs. Clute. In particular, plaintiff argues that Mrs. Clute's testimony is consistent with plaintiff's testimony. Pl.'s Br. 12, ECF No. 17. In response, defendant contends that the ALJ gave reasons germane to Mrs. Clute's testimony. Def.'s Br. 7, ECF No. 21.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

Defendant relies on the same three reasons identified above (*supra* § I). First, the ALJ noted that Mrs. Clute's testimony about the severity and frequency of plaintiff's headache symptoms appeared "inconsistent with [plaintiff's] own testimony." Tr. 695; *see also supra* note 4. These inconsistencies identified above (*supra* § I), appear to suggest that Mrs. Clute's testimony, at least as to frequency, suggested more intermittent symptoms than plaintiff's own testimony. *Compare* tr. 1127 ("Are there any months where he doesn't have migraines? Occasionally." (Mrs. Clute's testimony)), *with* tr. 676 ("A couple times, probably three times a month, something like that, two to three times a month." (plaintiff's testimony)). Although the ALJ, likely in error, indicated that plaintiff's testimony suggested more intermittent symptoms than Mrs. Clute's testimony, he also provided additional reasons for discounting Mrs. Clute's testimony, including: the "medical records show no instances of diagnosis or treatment related to the claimant's migraine symptoms," tr. 695 (citing *Clute*, 2011 WL 1626541, at *7), and plaintiff

7 – OPINION AND ORDER

did not report a history of headaches during his neuropsychological evaluation conducted in August 2009, tr. 695 (citing tr. 1020). These additional reasons (i.e., plaintiff's medical records and reporting omission) are germane to Mrs. Clute's testimony. *See* tr. 695 ("One would reasonably expect such medical evidence if the condition was as debilitating as [Mrs. Clute] alleged."); *see also supra* § I. To the extent that plaintiff's RFC does not reflect the testimony of Mrs. Clute, the ALJ gave reasons germane to Mrs. Clute.

### III. Vocational Expert Testimony

ALJ Mauer, during the first administrative hearing, called VE C. Kay Wise to testify. Tr. 682–686. Wise testified that plaintiff was capable of performing his past position as a buyer. Tr. 685; *see also* 20 C.F.R. § 404.1560(b)(2). Plaintiff contends that the VE's testimony was erroneous because it was inconsistent with information contained in the U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991) (DOT). Pl.'s Br. 16, ECF No. 17 (citing DOT § 162.157–038).

Plaintiff directs this Court's attention to DOT § 162.157–038 PURCHASING AGENT (profess. & kin.) alternative titles: buyer.[6] *Id*. at 18. Plaintiff argues that his moderate difficulties in social functioning and his limited buying experience (plaintiff worked as a buyer for 16–17

---

[6] DOT § 162.157-038 describes the "PURCHASING AGENT" position as follows::

> Coordinates activities involved with procuring goods and services, such as raw materials, equipment, tools, parts, supplies, and advertising, for establishment: Reviews requisitions. Confers with vendors to obtain product or service information, such as price, availability, and delivery schedule. Selects products for purchase by testing, observing, or examining items. Estimates values according to knowledge of market price. Determines method of procurement, such as direct purchase or bid. Prepares purchase orders or bid requests. Reviews bid proposals and negotiates contracts within budgetary limitations and scope of authority. Maintains manual or computerized procurement records, such as items or services purchased, costs, delivery, product quality or performance, and inventories. Discusses defective or unacceptable goods or services with inspection or quality control personnel, users, vendors, and others to determine source of trouble and take corrective action. May approve invoices for payment. May expedite delivery of goods to users. GOE: 11.05.04 STRENGTH: L GED: R4 M3 L4 SVP: 7 DLU: 87

months) preclude him from meeting the minimal DOT § 162.157–038 requirements. *Id.* at 17–18. In response, defendant argues that "[p]laintiff relies on the wrong DOT position." Def.'s Br. 10, ECF No. 21 (citing DOT § 162.157-018 BUYER (profess. & kin.) alternative titles: broker).[7] Thus, this Court must determine whether the VE erred in her testimony.

Plaintiff, during the first administrative hearing, described his former buyer position. Pursuant to that position, plaintiff placed a sign outside of his motor home and waited for individuals to sell him used blue jeans and jackets. Tr. 671–72. Plaintiff conducted approximately ten transactions a day, which he recorded in a notebook. Tr. 672. Each transaction generally took less than thirty minutes and often involved bartering over price. Tr. 673–74. After purchase, plaintiff would wash and dry the clothing and then sell to his buyer. Tr. 672; *see also* 107. Overall, plaintiff spent approximately 30 minutes walking, 30 minutes standing, and 5 hours sitting. Tr. 107. Having considered this evidence, this Court finds plaintiff's former buyer position conformed more closely to DOT § 162.157-018 "BUYER" than DOT § 162.157–038 "PURCHASING AGENT." Plaintiff purchased merchandise for resale. Plaintiff did not engage in the level of coordination and procurement activities envisioned in DOT § 162.157–038 "PURCHASING AGENT."

---

[7] DOT § 162.157-018 describes the "BUYER" position as follows:

> Purchases merchandise or commodities for resale: Inspects and grades or appraises agricultural commodities, durable goods, apparel, furniture, livestock, or other merchandise offered for sale to determine value and yield. Selects and orders merchandise from showings by manufacturing representatives, growers, or other sellers, or purchases merchandise on open market for cash, basing selection on nature of clientele, or demand for specific commodity, merchandise, or other property, utilizing knowledge of various articles of commerce and experience as buyer. Transports purchases or contacts carriers to arrange transportation of purchases. Authorizes payment of invoices or return of merchandise. May negotiate contracts for severance of agricultural or forestry products from land. May conduct staff meetings with sales personnel to introduce new merchandise. May price items for resale. May be required to be licensed by state. May be identified according to type of commodities, merchandise, or goods purchased.
> GOE: 08.01.03 STRENGTH: L GED: R4 M3 L4 SVP: 6 DLU: 86

The DOT § 162.157-018 "BUYER" position has a Specific Vocational Preparation (SVP)[8] of 6. SVP 6 requires an amount of time "[o]ver 1 year up to and including 2 years." DOT, App. C, II. Plaintiff's experience lasting 16–17 months satisfies this requirement. As to plaintiff's social functioning limitations, this Court previously found that plaintiff "fail[ed] to establish that the ALJ's RFC assessment erroneously omitted additional limitations stemming from his alleged social difficulties." *Clute*, 2011 WL 1626541, at \*5; *see also Snow-Erlin v. United States*, 470 F.3d 804, 807 (9th Cir. 2006) ("Law of the case is a jurisprudential doctrine under which an appellate court does not reconsider matters resolved on a prior appeal." (citation and internal quotation marks omitted)). To the extent that plaintiff's social difficulties exceed the description provided in DOT § 162.157-018, the VE explained the deviation. *See* tr. 685.[9] Accordingly, the ALJ did not err in relying on the VE's testimony.

## IV. Plaintiff's Changed Age Category

Plaintiff contends that the ALJ "failed to consider and evaluate [his] changed age category."[10] Pl.'s Br. 22, ECF No. 17. However, as noted by defendant, ALJ Madden found that plaintiff "was capable of performing past relevant work as a jeans buyer" under step four of the sequential analysis. Tr. 695; *see also* 20 C.F.R. § 404.1520(a)(4)(iv). Per 20 C.F.R. §

---

[8] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT App. C, II.

[9] The VE testified:

> Based on the hypothetical, I would not rule out the buyer position as it was performed. The superficial public contact vocationally speaks to complicated or more detailed and negotiation and so forth, to levels that appear to be beyond what was performed here. They basically showed product, talked about price, and an agreement was made, and I don't feel that in the setting where it was this would be ruled out.

Tr. 685.

[10] Plaintiff turned 55 years old on February 15, 2005, qualifying him as "a person of advanced age" under 20 C.F.R. § 404.1563(e). *See* tr. 65 (identifying plaintiff's date of birth).

10 – OPINION AND ORDER

404.1560(b)(3), if the Commissioner finds "that [claimant] ha[s] the residual functional capacity to do [claimant's] past relevant work," the Commissioner "will not consider [claimant's] vocational factors of age, education and work experience or whether [claimant's] past relevant work exists in significant numbers in the national economy." *See also* 20 C.F.R. § 404.1520(g). Thus, the ALJ correctly omitted consideration of plaintiff's age as a vocational factor.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED. This case is dismissed.


IT IS SO ORDERED.


DATED this 17th day of June, 2014.


_____s/Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**